IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                          )
IVAN A. SEVER,                            )          CIVIL ACTION NO.
                                          )          1:18-cv-11482
            Plaintiff,                    )
v.                                        )          **COMPLAINT**
                                          )
City of SALEM, Massachusetts              )
                                          )
            Defendant                     )
_____ )


## INTRODUCTION

1.      Plaintiff Ivan A. Sever, brings this civil action for declaratory, equitable and other relief pursuant to the Fourteenth Amendment to the United States Constitution as secured by 42 U.S.C. § 1983, and under the statutes and regulatory standards of the Commonwealth of Massachusetts – including Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), the Massachusetts Department of Transportation Highway Division's "Procedures for Speed Zoning on State and Municipal Roads" and "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices" - against the City of Salem, Massachusetts.

## JURISDICTION

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201. Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.  This complaint also alleges statutory and regulatory standards violations of the Commonwealth of Massachusetts.  Supplemental jurisdiction arises pursuant to 28 U.S.C. § 1367, and the principals of supplemental jurisdiction.  The federal and state law claims arise out of a common nucleus of operative facts, and the entire suit commenced by this complaint would ordinarily be tried in one judicial proceeding.  The exercise of supplemental jurisdiction will avoid duplication and multiplicity of action, and will promote the interests of judicial economy and fairness.

## VENUE

3.      Venue is proper in this Court based upon 28 U.S.C § 1391, in that a substantial part of the events or omissions giving rise to the claims occurred in this district as alleged below.  In addition, the Defendant City of Salem, Massachusetts, maintains its principal place of business in this district.

## PARTIES

4.      Plaintiff Ivan A. Sever (hereinafter "Mr. Sever"), is an individual residing at all relevant times at 25 Ingalls Terrace, Swampscott, Essex County, Massachusetts 01907.  He is an Associate Professor, Songwriting, Berklee College of Music, Boston, MA.  He served as MA State Chapter Coordinator (retired) for the National Motorists Association, whose mission is to protect motorists' civil rights, e.g., freedom from arbitrary traffic stops, and promote traffic safety through sound engineering practices.

5.     Defendant City of Salem, Essex County, Massachusetts (hereinafter "City" or "Salem"), is a municipal corporation organized under the laws of the Commonwealth of Massachusetts, having its principal office at 98 Washington Street, Salem, Essex County, Massachusetts 01970.

    a.  The Salem Department of Public Works (hereinafter "DPW"), is a department of the City, and is responsible for the maintenance of the City's public roads, and installation, repair, and maintenance the City's traffic and speed limit signs.

    b.  The Salem Police Department (hereinafter "Police"), is a department of the City, and is responsible for enforcement of laws and regulations, including motor vehicle speed limits.

## **BACKGROUND**

6.     Mass.  Gen. L. ch. 85, § 2, as amended through St. 1986, c. 689, § 3, entitled "Traffic signs or devices; erection and maintenance; rules and regulations," is the enabling statute that authorizes cities and towns to erect and maintain traffic signs within their jurisdiction.  With respect to speed control signs (a/k/a speed limit signs), it expressly provides in pertinent part, "_speed control signs may be established only in accordance with the provisions of section eighteen of chapter ninety_."  (Id.) (emphasis added).

7.     Mass. Gen. L. ch. 90, § 18, as amended through St. 1986, c. 689, §§ 8-9, entitled "Special regulations, speed and use of vehicles," is the enabling statute that

authorizes cities and towns to "make special regulations as to the speed of motor vehicles" within their jurisdiction subject to the approval of the Massachusetts Department of Transportation ("Department" or "MassDOT") and the Registrar of Motor Vehicles ("RMV").   "No such Special Speed Regulation shall be effective until there shall have been erected ... *signs conforming to standards adopted by the department*, setting forth the speed or other restrictions established by the regulation."  (Id.) (emphasis added).

8.     In accordance with the authority granted by Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), the Highway Division of MassDOT (hereinafter "MassHwy") promulgated regulatory standards entitled "Procedures for Speed Zoning on State and Municipal Roads."  (Revised February, 2017) (Exhibit No. 1).

    a.   With respect to the laws governing Massachusetts speed regulations, it provides in pertinent part:

Sections 17, 17A, 17C, 18 and 18B of Chapter 90 of the Massachusetts General Laws (MGL) govern speed limits on all streets and highways throughout the Commonwealth, with exception to the Massachusetts Turnpike.  In addition, MassDOT and all municipalities are required by MGL c. 85 § 2 to conform to the *Manual on Uniform Traffic Control Devices* (MUTCD) for the posting of all regulatory and warning signage, including speed limit signs, on all streets and highways.

(Id. at 1).

    b.   With respect to classification of speed limits, it provides in pertinent part:

Under satisfactory operating conditions, speed limits can be classified into two different categories: regulatory (posted) speed limits and statutory (unposted, with some exceptions) speed limits.  MGL c. 90 §§ 18 and 18B establish the requirements for posting regulatory speed limits.  MGL c. 90 §§ 17, 17A and 17C cover the criteria for statutory speed limits.

(Id. at 2).

    c.   With respect to regulatory speed limits, it provides in pertinent part:

*A regulatory speed limit is* one that has a completed a thorough traffic engineering study, has a Special Speed Regulation that has been signed by the roadway owner, the Registry of Motor Vehicles, and the MassDOT Traffic & Safety Engineering Section, and has the appropriate numerical speed limit signage erected to clearly define the special speed zones.  A detailed description of these procedures may be found in **Part 3** of this document.  With exception to Safety Zones as noted in **Section 9.c**, *the establishment of a regulatory speed limit must follow this procedure or it is in violation of MGL c. 90 § 18 and is therefore considered unenforceable*.

(Id.) (emphasis added).

    d.   With respect to establishing new speed limits, it provides in pertinent part:

With exception to those noted in **Part 9**, MassDOT requires Special Speed Regulations for all new speed limits on all State Highways and municipally-owned streets and highways.  However, the steps for initiating this process are contingent upon road ownership.

For locally-owned ways, the city or town should put a request for a new Special Speed Regulation in writing to their MassDOT District Office.  The District may advise the municipality on matters such as extents of proposed speed zones, overlap with any existing Special Speed Regulations, and other items that may assist in the municipality's development of the Traffic Engineering Study (see **Part 5**).  Upon receipt of the city or town's completion of the Traffic Engineering Study, the District will review for accuracy and, if in conformance with **Part 5**, will forward to the MassDOT Traffic & Safety Section.  The Traffic & Safety Section will then prepare the Special Speed Regulation and return it to the city or town for approval by the body that governs their municipal traffic code.  Once the municipality has adopted the regulation, signed copies are returned to the Traffic & Safety Section where they are signed and approved by the State Traffic Engineer and the Registrar of Motor Vehicles.  Following this final approval from MassDOT, the municipality may erect the new speed limit signage and the limit is now enforceable.  The municipality is required to notify the District Office that the signs have been erected so that MassDOT personnel may review for conformance.  A flow chart of this process is shown in **Fig. 4-1**.

(Id. at 4-5).



**Fig. 4-1: Speed Limit Procedures on Municipal Roads**

(Id., Fig. 4-1, at 6).

e.  With respect to regulatory speed limit ("Speed Limit") signs, it expressly

defines them as follows:

Standard *Speed Limit (MUTCD code R2-1) signs*, as shown in **Fig. 8-1**, are
rectangular in shape with black, non-reflective legend and border on white,
reflectorized sheeting.

(Id. at 17) (emphasis added).



**Fig. 8-1: Standard R2-1 (Speed Limit) Sign with Dimensions
(Source: *Standard Highway Signs*, 2004)**

(Id., Fig. 8-1, at 18).

f.  With respect to traffic engineering studies for Special Speed Regulations,

it provides in pertinent part:

MassDOT conforms to MUTCD standards and guidance for developing Special Speed Regulations both because it is the law, but also to ensure that speed limits are applied consistently across all streets and highways within the Commonwealth.  Specifically, when developing a Special Speed Regulation, it must "be established on the basis of an engineering study that has been performed in accordance with traffic engineering practices.  The engineering study shall include an analysis of the current speed distribution of free-flowing vehicles." The purpose of this study is to document the conditions that will justify a proposed speed limit that is safe, reasonable, and self-enforcing.

(Id. at 7) (footnote omitted).

g.  With respect to establishing speed zoning, it provides in pertinent part:

The observed 85th percentile speed is the basis for establishing speed zoning. This method assumes that a majority of motorists are prudent and capable of selecting safe speeds and is in conformance with the MUTCD. Thus, speeds established in this manner meet the legal requirement that they be "reasonable and proper."

Generally, once the 85th percentile speed has been calculated, the value is rounded to the nearest multiple of 5 to determine the limit. However, there may be some conditions that justify a speed limit that varies from the 85th percentile speed, including:

- *In sections that have been identified as having an unusual rate of crashes that can be attributed to speeding the area may be zoned lower than the 85th percentile speed, but in no case more than 7 miles per hour lower.* This should be considered more as an exception than the rule, and should be done only where enforcement agencies will ensure consistent enforcement which will increase the effectiveness of the zone to an acceptable level of conformance.

(Id. at 15) (emphasis added).

h.  With respect to the purpose of speed regulation, it provides in pertinent

part:

To effectively reduce vehicle speeds, setting speed limits should be included only as a part of a broader strategy that includes geometric changes to the road and other educational and enforcement components.   *Studies have shown that arbitrarily raising or lowering posted speed limits alone will result in a difference of less than 2 mph in mean and 85th percentile speeds.*  This small change is not practically meaningful and it appears that "new posted speed limits alone, without some additional engineering, enforcement, or educational measures, [do] not have a major effect on driver behavior or encourage most drivers to comply with the posted speed limit." *There is also no evidence that shows arbitrarily lowering or raising the posted speed limit will have a statistically significant impact on crash reductions.*

Based upon this information, the purpose of creating a speed zone should not solely be based upon an anticipation of reducing speeds.  Rather, the zone should be established to increase safety for all road users by setting a reasonable and proper speed that prudent drivers will follow.  *A speed limit that has been established in accordance to standard traffic engineering practices will diminish the likelihood of vehicles traveling unsafely at disparate rates,* aids in driver expectancy, and assists in law enforcement's ability to enforce.

(Id. at 4) (emphasis added) (footnote omitted).

9.     Mass.  Gen. L. ch. 85, § 2, expressly authorizes cities and towns to erect and maintain traffic signs (except speed control signs (a/k/a speed limit signs)) "on any way within its control" without MassDOT approval "provided such signs ... are in conformance with the department's current manual on uniform traffic control devices...".

10.     In accordance with the authority granted by Mass. Gen. L. ch. 85, § 2, MassHwy promulgated regulatory standards entitled "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices."  (Exhibit No. 2) (M.U.T.C.D.). With respect to speed control and "official" Speed Limit signs, it expressly provides in pertinent part:

**Section 10A-8** **Speed Control**: Of the special regulations adopted by municipalities under the provisions of Chapter 90, Section 18 of the General

Laws, the most commonly used is the special regulation of the speed of motor vehicles. Considerable data including speed observations and trial runs must be obtained by municipal officials, usually the Police Department. The final determination is based upon the ***85-percentile method***, which is that speed at or below which 85% of the vehicles observed were actually traveling. Department representatives are available to demonstrate the proper method for conducting the necessary studies and drafting the covering regulation, upon written request of local officials.

Procedure for Establishment of Legal Speed Zones

(1) The municipality is to conduct proper studies and submit data to the Department. (Municipalities usually accept the available services of the Department in conducting studies and assembling the data).

(2) After the speed zones, proposed by the local authorities, are reviewed by the Department, they are returned to the municipality for formal adoption by the rule-making body.  During this time, the municipality is responsible for any and all hearings required for adoption.

(3) Upon receipt of notice of formal adoption by the municipality, the Department, acting jointly with the Registry, will certify and approve.

(4) Certified regulation is returned to municipality.

(5) *Official Speed Limit signs may then be installed in accordance with the specific provisions of the approved speed regulation.*

(6) *The Special Speed Regulation is then enforceable against violators.*

"The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices," § 10A-8, 10-11 (January 2012) (emphasis added).  (Exhibit No. 2, supra, at 10-11).

11.    Mass. Gen. L. ch. 90, § 17, as amended through St. 1986, c. 689, § 7, entitled "Speed Limits," expressly provides in pertinent part:

[1] *No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public.* [2] *Unless a way is otherwise posted in accordance with the provisions of section eighteen*, it shall be prima facie

evidence of a rate of speed greater than is reasonable and proper as aforesaid (1) if a motor vehicle is operated on a divided highway outside a thickly settled or business district at a rate of speed exceeding fifty miles per hour for a distance of a quarter of a mile, or (2) on any other way outside a thickly settled or business district at a rate of speed exceeding forty miles per hour for a distance of a quarter of a mile, or (3) inside a thickly settled or business district at a rate of speed exceeding thirty miles per hour for a distance of one-eighth of a mile, or (4) within a school zone which may be established by a city or town as provided in section two of chapter eighty-five at a rate of speed exceeding twenty miles per hour. ... [4] *If a speed limit has been duly established upon any way, in accordance with the provisions of said section, operation of a motor vehicle at a rate of speed in excess of such limit shall be prima facie evidence that such speed is greater than is reasonable and proper* ....

Mass. Gen. L. ch. 90, § 17 (sentence numbers added in brackets) (emphasis added).

12.     With respect to Mass. Gen. L. ch. 90, § 17, the "Procedures for Speed Zoning on State and Municipal Roads" regulatory standards provide in pertinent part:

Statutory speed limits exist in the absence of Special Speed Regulations.  With exception to School Zones, if a Special Speed Regulation exists it will always supersede the statutory speed limit.  On roads without posted speed limits, MGL c. 90 § 17 requires that drivers operate motor vehicles at a rate of speed that is no greater than reasonable and proper with regard to the use of the road and safety of the public.  The law states:

"It shall be prima facie evidence of a rate of speed greater than is reasonable and proper if a motor vehicle is operated in excess of:

- 50 miles per hour on a divided highway outside of a thickly settled or business district for at least ¼ of a mile.
- 40 miles per hour on an undivided highway outside of a thickly settled or business district for at least ¼ of a mile.
- 30 miles per hour in a thickly settled or business district for at least ⅛ of a mile.
- 20 miles per hour in a legally established school zone."

MGL c. 90 § 17C allows municipalities to establish a statutory speed limit of 25 miles per hour in thickly settled or business districts on any city or town way that is not a State Highway.  Additional information on this option may be found in **Section 9.e**.

MGL c. 90 § 1 defines a thickly settled or business district as "the territory contiguous to any way which is built up with structures devoted to business, or the territory contiguous to any way where dwelling houses are situated at such distances as will average less than two hundred feet between them for a distance of a quarter of a mile or over."

The distance requirements associated with the enforcement of MGL c. 90 § 17 should be noted.  Instantaneous radar or laser readings are not adequate; to be in violation, the motor vehicle must be shown to have been in excess of these speed limits for at least the entire distance associated with each respective speed limit.

"Procedures for Speed Zoning on State and Municipal Roads," 2-3 (2017) (emphasis added) (Exhibit No. 1, supra, at 2-3) (footnote omitted).

13.     Mass. Gen. L. ch. 90, § 17C, as added by St. 2016, c. 218, § 193 (effective November 7, 2016), entitled "Establishment of 25-miles-per-hour speed limit in thickly settled or business district in city or town; violation," expressly provides in pertinent part:

(a) Notwithstanding section 17 or any other general or special law to the contrary, the city council, the transportation commissioner of the city of Boston, the board of selectmen, park commissioners, a traffic commission or traffic director of a city or town that accepts this section in the manner provided in section 4 of chapter 4 may, in the interests of public safety and without further authority, *establish a speed limit of 25 miles per hour on any roadway inside a thickly settled or business district in the city or town on any way that is not a state highway*.

 (b) Upon establishing a speed limit under this section, the city or town shall notify the department.  The operation of a motor vehicle at a speed in excess of a speed limit established under this section shall be a violation of section 17.

Mass. Gen. L. ch. 90, § 17C (emphasis added).

14.     With respect to Mass. Gen. L. ch. 90, § 17C, the "Procedures for Speed Zoning on State and Municipal Roads" regulatory standards provide in pertinent part:

**9.e. Thickly Settled or Business Districts**.  Thickly Settled or Business Districts, as defined in MGL c. 90 § 1, have a default statutory speed limit of 30 mph unless the municipality has adopted MGL c. 90 § 17C., wherein the statutory speed limit in these areas is reduced to 25 mph. However, if a Special Speed Regulation has

been enacted on this section of roadway the regulatory speed will govern. With exception to School Zone Speed Limits discussed in Section 9.d, *Special Speed Regulations will always supersede a statutory speed limit*.

A municipality has the option of adopting MGL c. 90 § 17C on either a city- or town-wide basis or on a street-by-street basis. MassDOT recommends the former since it allows for consistent messaging and is less likely to create confusion for motor vehicle operators. In addition, adopting the 25 mph statutory limit on a city- or town-wide basis will allow vehicles to place MA-R2-9A or MA-R2-9B regulatory (black legend on white background) signs at the municipal boundaries while staying in conformance with the MUTCD, whereas MA-W13-4 warning (black legend on yellow background) signs may only be used for individual streets (Fig. 9-5).

Cities and towns are responsible for modifying their Municipal Traffic Code if they have adopted the 25 mph statutory limit in Thickly Settled or Business Districts. In the case that it is adopted on a street-by-street basis, those streets and the extents of those limits should clearly be identified. In addition, MGL c. 90 § 17C requires the municipality to notify MassDOT if the 25 mph statutory limit is adopted.



**Fig. 9-5: MA-R2-9A, MA-R2-9B, and MA-W13-4 Signs**

"Procedures for Speed Zoning on State and Municipal Roads," 22 (2017) (Exhibit No. 1, supra, at 22; Fig. 9-5, at 22).

## STATEMENT OF FACTS

### City of Salem, Special Speed Regulation No. 1042 (Swampscott Road)

15.     Upon information and belief, Swampscott Road, located in Salem, Massachusetts, falls under the jurisdiction of the City of Salem, and is not a state highway.

16.     On July 24, 1975, the City Council of Salem adopted Special Speed Regulation No. 1042, in accordance with the provisions of Mass. Gen. L. ch. 90, § 18. (Exhibit No. 3, Special Speed Regulation No. 1042 ("Regulation No. 1042")).

    a.  Regulation No. 1042 established speed limits at which motor vehicles may be operated in the areas described, as follows:

        i.  Swampscott Road – Eastbound

Beginning at a point 200 feet east of the junction of Highland Avenue, Route 107,
Thence easterly 0.30 miles at 35 miles per hour
              0.80    "  " 40    "      "   "
              0.10    "  " 30    "       "   " ending at the
Salem/Swampscott Line; the total distance being 1.2 miles.

        ii.  Swampscott Road – Westbound

Beginning at the Salem/Swampscott Line,
Thence westerly 0.10 miles at 30 miles per hour
              0.80    "   " 40    "     "   "
              0.30    "   " 35    "     "   "
              0.04  "   " 25    "     "   " ending at the
junction of Route 107, Highland Avenue; the total distance being 1.24 miles.

    b.   Operation of a motor vehicle at a rate of speed in excess of these limits shall be prima facie evidence that such speed is greater than is reasonable and proper.

    c.   The Massachusetts Department of Public Works and the Registrar of Motor Vehicles, acting jointly, thereby certified in writing, that Regulation No. 1042 is consistent with the public interest.

    d.   Standard signs must be erected at the beginning of each zone.

**<u>Swampscott Road Speed Limit Signs (R2-1) (circa 2017)</u>**

17.    Upon information and belief, the City erected standard regulatory Speed Limit signs (R2-1) on Swampscott Road, at the beginning of each zone in accordance with Regulation No. 1042, and maintained these through late 2017, as follows:

    a.   <u>Swampscott Road – Eastbound</u>, beginning east of the junction of Highland Avenue, Route 107, and ending at the Salem/Swampscott Line.  (See Figure 1, below):

        i.   35 m.p.h. at No. 8 Swampscott Road (approximately);

        ii.   40 m.p.h  at No. 27 Swampscott Road (approximately);

        iii.   40 m.p.h  at No. 47 Swampscott Road (approximately);

        iv.   40 m.p.h  at No. 63 Swampscott Road (approximately);

        v.   30 m.p.h. at No. 150 Swampscott Road (approximately); and,

vi.  30 m.p.h. at No. 198 Swampscott Road (approximately).



| #8 (East) | #27 (East) | #47 (East) |

| #63 (East) | #150 (East) | #198 (East) |

Figure 1:  Six (6) Speed Limit (R2-1) signs on Swampscott Road – Eastbound (2017).

b.  <u>Swampscott Road – Westbound</u>, beginning west of the Salem/Swampscott Line, and ending at the junction of Highland Avenue, Route 107.   (See Figure 2, below):

   i.   40 m.p.h. at No. 198 Swampscott Road (approximately);

   ii.  40 m.p.h  at No. 51 Swampscott Road (approximately);

   iii. 35 m.p.h  at No. 37 Swampscott Road (approximately);

   iv.  35 m.p.h  at No. 27 Swampscott Road (approximately); and,

   v.   25 m.p.h  at No. 7 Swampscott Road (approximately).



#198 (West)          #51 (West)          #37 (West)

#27 (West)          #7 (West)

Figure 2:  Five (5) Speed Limit signs (R2-1) on Swampscott Road – Westbound (2017).

## Salem Adoption of c. 90, § 17C, Speed Limit on a Citywide Basis

18.      On March 9, 2017, the City Council of Salem accepted Mass. Gen. L. ch. 90, § 17C, and the City established a speed limit of 25 miles per hour on any roadway inside a thickly settled or business district in the City on any way that is not a state highway.  The order was approved by the Mayor of Salem on March 13, 2017.  (Exhibit No. 4, City of Salem, City Council Order).

19.      In a letter dated March 22, 2017, Cheryl A. LaPointe, City Clerk of Salem, wrote the Massachusetts Department of Transportation, Highway Division – Traffic & Safety Engineering, Attention: Regulations Engineer, regarding the "City of Salem

Adoption of 25 Miles Per Hour Speed Limit," and enclosed a copy of the City Council Order.  (Exhibit No. 5).

20.     Upon information and belief, in 2017 sometime after the City's adoption of Mass. Gen. L. ch. 90, § 17C, the City erected a Speed Limit sign (MA-R2-9A) on Swampscott Road, at the municipal boundary with the town of Swampscott, Massachusetts, in conformance with the "Procedures for Speed Zoning on State and Municipal Roads" and the M.U.T.C.D., and maintains this sign to the present day.  (See Figure 3, below):



Figure 3:  Speed Limit sign (MA-R2-9A) on Swampscott Road – Westbound, Salem-Swampscott Municipal Boundary (2017).

**Salem's Repeal of Special Speed Regulation No. 1042 (Swampscott Road)**

21.     On July 31, 2017, the City Council of Salem adopted an ordinance relative to traffic ordinance repealing the Special Speed Regulations on Swampscott Road, which correspond to Special Speed Regulation No. 1042.  (Exhibit No. 6, City of Salem, City Council Order #485).

18

22.     Upon information and belief, Swampscott Road does not meet the definition of a roadway inside a thickly settled or business district pursuant to Mass. Gen. L. ch. 90, § 1, and for which Mass. Gen. L. ch. 90, § 17C, allows municipalities to establish a statutory speed limit of 25 miles per hour.

23.     Upon information and belief, in the absence of Special Speed Regulations, the statutory speed limit on Swampscott Road is 40 miles per hour (unposted), because it does meet the definition of undivided highway outside a thickly settled or business district for at least ¼ of a mile pursuant to Mass. Gen. L. ch. 90, § 17(2).

## Swampscott Road Speed Limit Signs (R2-1) (circa 2018)

24.     Upon information and belief, sometime after the City's repeal of Special Speed Regulation No. 1042 on July 31, 2017, the City removed all the regulatory Speed Limit signs (R2-1) greater than 25 m.p.h. on Swampscott Road (which were previously erected at the beginning of each zone in accordance with Regulation No. 1042), replaced them with 25 m.p.h. regulatory Speed Limit signs (R2-1), and maintains these 25 m.ph. signs to the present day absent any applicable Special Speed Regulation, as follows:

    a.  Swampscott Road – Eastbound, beginning east of the junction of Highland Avenue, Route 107, and ending at the Salem/Swampscott Line.  (See Figure 4, below):

        i.  25 m.p.h. at No. 8 Swampscott Road (approximately);

        ii.  25 m.p.h  at No. 27 Swampscott Road (approximately);

        iii.  25 m.p.h  at No. 47 Swampscott Road (approximately);

iv.   25 m.p.h  at No. 63 Swampscott Road (approximately);

v.   25 m.p.h. at No. 150 Swampscott Road (approximately); and,

vi.   25 m.p.h. at No. 198 Swampscott Road (approximately).



| #8 (East) | #27 (East) | #47 (East) |

| #63 (East) | #150 (East) | #198 (East) |

Figure 4:  Six (6) Speed Limit (R2-1) signs on Swampscott Road – Eastbound (2018).

b.   <u>Swampscott Road – Westbound</u>, beginning west of the Salem/Swampscott
Line, and ending at the junction of Highland Avenue, Route 107.   (See
Figure 5, below):

i.   25 m.p.h. at No. 198 Swampscott Road (approximately);

ii.   25 m.p.h  at No. 51 Swampscott Road (approximately);

iii.   25 m.p.h  at No. 37 Swampscott Road (approximately);

    iv.   25 m.p.h  at No. 27 Swampscott Road (approximately); and,

    v.   25 m.p.h  at No. 7 Swampscott Road (approximately).



#198 (West)          #51 (West)          #37 (West)

#27 (West)            #7 (West)

Figure 5:  Five (5) Speed Limit signs (R2-1) on Swampscott Road – Westbound (2018).

## **Swampscott Road Speed Limit Signs (R2-1) (2017 vs. 2018)**

25.    Upon information and belief, photographs (with GPS coordinates) of the regulatory Speed Limit signs (R2-1) on Swampscott Road may be superimposed upon a GPS coordinate map, for the purpose of comparison between how and where they appeared in 2017 (See Figures 6(a) and 7(a), Swampscott Road, Eastbound, below), and how and where they currently appear in 2018 (See Figures 6(b) and 7(b), Swampscott Road, Westbound, below).



Figure 6(a): Eastbound (2017)



Figure 6(b): Eastbound (2018)



Figure 7(a): Westbound (2017)



Figure 7(b): Westbound (2018)

## Mr. Sever and Swampscott Road

26.     As a longtime resident of Swampscott, Massachusetts, on a daily basis Mr. Sever regularly drives his automobile on Swampscott Road in order to travel to and from both Route 128, and the Route 107 business district which includes the Hawthorne Square Mall Shopping Center, and stores such as Home Depot, Market Basket, Target, etc.

27.     Upon information and belief, numerous other residents of Swampscott and Marblehead, Massachusetts, use Swampscott Road in order to travel to and from both Route 128, and the Route 107 business district which includes the Hawthorne Square Mall Shopping Center, and stores such as Home Depot, Market Basket, Target, etc.

28.     On or about November 2017, Mr. Sever noticed that the removal of all of the 30, 35 and 40 m.p.h. regulatory Speed Limit signs (R2-1) on Swampscott Road, and their replacement with 25 m.p.h. regulatory Speed Limit signs (R2-1).

29.     In an electronic contact form message dated January 9, 2018, Mr. Sever wrote David Knowlton, P.E., City Engineer and Interim Director of Public Works, City of Salem ("Engineer Knowlton"), regarding the "[City of Salem MA] Swampscott Rd posted speed limit change." (Exhibit No. 7).  The message stated in pertinent part:

Dear Mr. Knowlton,

I'd like to bring to your attention the fairly recent speed limit change on Swampscott Rd. This change from the previous 40 and 35 mph postings to the current 25 mph posting seems to be implemented in response to the First Street/Swampscott Rd intersection study.

Notwithstanding the Commonwealth legislative change recently enacted for unposted, thickly settled roadways (which is not applicable to Swampscott Rd), as you know the only legal way to change a posted speed limit is to conduct a new speed study (assuming one was done in the first place) in accordance with the federal MUTCD guidelines, and seeking an approval from MASSDOT. City Council cannot simply repeal an established, posted speed limit.

While the City awaits the approval of a roundabout at the intersection, I urge you to reset the speed limits on Swampscott Rd to the previous and presumably legal values.

Thank you,

Ivan Sever

MA State Chapter Coordinator (retired)
National Motorists Association

(Id.).

30.     In an e-mail dated January 9, 2018, Engineer Knowlton wrote Mr. Sever a reply as follows (in pertinent part):

Thanks ivan, we are reviewing the speed limit issue with district 4, you are correct that the limits wil likely return to previous speeds.

We will resolve as soon as possible.

Thanks

david

(Id.).

31.     In an electronic contact form message dated May 17, 2018, Mr. Sever wrote Nicholas Downing, Acting Director of Traffic and Parking, City of Salem ("Director Downing"), regarding the "[City of Salem MA] Swampscott Rd Speed Regulation." (Exhibit No. 8). The message stated in pertinent part:

Dear Mr. Downing,

This is to advise you fairly recent speed limit postings along Swampscott Road, under the jurisdiction of City of Salem, are in violation of the MassDOT Procedures for Speed Zoning on State and Municipal Roads for the following reasons:

1. There was no speed limit change request sent by Salem to the District MassDOT Office.

2. There was no communication with MassDOT explaining the procedure.

3. There was no traffic study done in accordance with the federal MUTCD standards.

4. There is no record of approval by MassDOT and Registry of Motor Vehicles.

(I shouldn't need to remind you Section 193 of Chapter 218 of the Acts of 2016 adopted by Salem City Council is not applicable to Swampscott Road.)

This noncompliance makes the current speed limits on Swampscott Road both illegal and unenforceable.

Studies have shown that arbitrarily raising and lowering posted speed limits will result in difference of less than 2 mph in mean and 85th percentile speeds. There is also no evidence that shows arbitrarily raising and lowering posted speed limits will have a statistically significant impact on crash reduction.

I am urging you to return the speed limit signs along Swampscott Road to the previous, legal postings. For reference, please find a copy of the last approved regulation.

Thank you

(Id.).

32.     In an e-mail dated May 21, 2018, Director Downing wrote Mr. Sever a reply as follows (in pertinent part):

Mr. Sever:

Thank you for reaching out re: the speed limit signs on Swampscott Road.

I am aware of this issue, and I am working to correct it. When the City adopted a City-wide speed limit of 25 mph, *we knew certain roads would not fall into that category, including this section of Swampscott Road*. However, the City Council repealed the special speed limit zones for this section of the road last fall, and *the signage was changed*.

We have been working with the Council to have this action reversed, and then make sure the correct, accurate signage is posted.

*I agree with you entirely that we should not be arbitrarily changing speed limits anywhere in the City*, and I share your frustration about the resulting confusion from this back and forth. I hope to be able to resolve this issue in the near future.

Please do not hesitate to reach out with any further questions or concerns, on this or any other transportation issue.

Best,

Nick Downing

Acting Director of Traffic and Parking

(Id.) (emphasis added).

33.     The City has not removed the 25 m.p.h. Speed Limit signs (R2-1) at issue on Swampscott Road.

34.     Upon information and belief, the City does not intend to remove the 25 m.p.h. Speed Limit signs (R2-1) at issue on Swampscott Road, despite any assurances to the contrary that either Engineer Knowlton or Director Downing gave to Mr. Sever.

**Salem Police Speed Limit Enforcement**

35.     Upon information and belief, the Salem Police regularly threaten to enforce, and enforce Speed Limit signs (R2-1), including the 25 m.p.h. Speed Limit signs (R2-1) at issue on Swampscott Road, by performing Police traffic stops on automobile

drivers, and then issuing drivers warnings or traffic citations for violations of Special Speed Regulations lawfully made under the authority of Mass. Gen. L. ch. 90, § 18.

36.     On February 25, 2008, the Salem News newspaper published an article entitled "Salem police handing out big fines."  (Exhibit No. 9).  The article reported in pertinent part:

> SALEM - Salem police issued more than $3,000 in traffic fines in just one weekend this month as part of an ongoing crackdown on speeding and aggressive drivers.
>
> One officer working Highland Avenue and North Street on Feb. 16, a Saturday afternoon shift, wrote up $1,400 in tickets to drivers who were going too fast or who failed to stop at red lights.
>
> Since the summer, Mayor Kim Driscoll's new selective enforcement program has tallied *$73,000*.
>
> Although the city is strapped for cash and the police work has raised a lot of money, that's not the goal, city officials said. ...
>
> ... Even though the city doesn't get all of the money issued in tickets — some of the fines are dismissed or reduced in court — *the program was set up so that the fines would cover the cost of the overtime and details*, Driscoll said. ...
>
> *... Police say they don't know if the city is safer, but they do know that a lot of motorists have been stopped and a lot more have seen the flashing blue lights. The message, they said, has to be getting out.*
>
> "I would hope that if you travel the same streets every day ... and see an officer engaged in a traffic stop," [Lt. Robert] Preczewski [head of the police traffic division] said, "that sooner or later people would say, 'I've got to watch my speed because police could be on the street today.'"

(Id.) (emphasis added) (comments added in brackets).

37.     On January 21, 2011, the Salem Gazette newspaper published an article entitled "City focuses on safer roads; new officers help anti-speeding campaign". (Exhibit No. 10).  The article reported in pertinent part:

Salem has taken some serious steps to combat traffic violations in recent months, to the delight of many residents. ...

... Mayor Driscoll said both the program and the new officers are having an effect.

"We've had some good feedback from people," she said. "I think it is having an impact on peoples' behavior."

The mayor added that the city has seen an increase in the number of tickets issued. ...

... Enforcement plays a large role in the success of the *Go Fast, Get Fined campaign*.   In a letter from the Salem Police Department to the mayor's office, sent in December, Chief Paul Tucker stated "Pursuant to the Go Fast initiative, a total of 288 citations have been issued, which comes to *$26,311.00* in fines." ...

... According to Mayor Driscoll, Go Fast, Get Fined was originally planned to last one and half months. But in light of its success, it will remain in place. ...

(Id.) (emphasis added).



(Id.).

38.    On May 7, 2012, the WBZ television station aired a news segment and published an article entitled "I-Team: Nearly 900 Illegal Speeding Tickets Written in Salem from 2010-11".  (Exhibit No. 11).  The article reported in pertinent part:

BOSTON (CBS) – The I-Team has uncovered a story that affects hundreds of drivers who have paid hefty speeding fines over the past two years.

All of the tickets were written on a new road in Salem called the Bridge Street Bypass ...

... According to state law, before a speed limit can be posted on a new road, state transportation officials have to conduct a traffic engineering study to determine what speed limit is most appropriate for the road.

The Massachusetts Department of Transportation website clearly states that any speed limits posted without a study are "illegal and unenforceable."

... that study was never done for the Bridge Street Bypass ...

... The I-Team wanted to find out how many other drivers got slapped with fines on that roadway. We obtained hundreds of pages of citations written by Salem police on that road. We found in 2010 and 2011, 896 drivers were fined a total of more than *$175,000*.

*When we asked Salem police about it, they told us they are just enforcing signs posted by the state.*

State Department of Transportation administrator Frank DePaola acknowledged to the I-Team that a mistake was made. He agreed that by the letter of the law, the tickets written during that time period are not legal. He also apologized to the hundreds of drivers who received tickets. ...

(Id.) (emphasis added).

39.    Upon information and belief, the City posts and enforces speed limits known, or suspected by it to be invalid under state law, in a clandestine fashion, not primarily for the purposes of safety, but done with the purpose of stopping motorists to increase City revenues.

### **Existence of an Actual Case or Controversy Between the Parties**

40.    There is an actual case or controversy between Mr. Sever and the City regarding the illegality and unconstitutionality of the City's executive actions, and Speed Limit signs (R2-1) generally applicable to Mr. Sever.

41.     A real dispute exists, and Mr. Sever has a sufficient personal interest in the rights and relief at stake to meet standing requirements.

42.     The City has failed to remove Speed Limit signs (R2-1) which are unauthorized by Special Speed Regulations and do not conform to MassDOT regulatory standards, despite any assurances to the contrary.

43.     There exists a continuing inherent threat, indeed a likelihood, of both Police traffic stops, and issuance of traffic citations for operating a motor vehicle at a rate of speed in excess of unauthorized Speed Limit signs (R2-1).

44.     Further, judicial efficiency would not be promoted by declining to act on this case, only to face the same issue again.

45.     This controversy can be resolved and uncertainty removed by declaratory judgment.

## CLAIMS FOR RELIEF

## COUNT I

(Massachusetts Statutory Violation)

Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2)

46.     Mr. Sever repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

47.     The City's, erection, maintenance and enforcement of speed control signs, a/k/a/ Speed Limit signs (R2-1), designating a Special Speed Regulation purporting to be lawfully made under the authority of Mass. Gen. L. ch. 90, § 18, without: (1) MassDOT and the Registrar, acting jointly, certifying in writing that such regulation is consistent with the public interests, and (2) erecting upon the ways affected thereby and at such points as MassDOT and the Registrar, acting jointly, may designate, signs, conforming to standards adopted by MassDOT, setting forth the speed established by the regulation, violates the provisions of  Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), and therefore these Speed Limit signs (R2-1) are illegal and unenforceable.

## COUNT II

(Massachusetts Regulatory Standards Violation)

"Procedures for Speed Zoning on State and Municipal Roads" (as authorized by Mass. Gen. L. ch. 90, § 18 and set forth in Mass. Gen. L. ch. 85, § 2)

48.     Mr. Sever repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

49.     The City's erection, maintenance and enforcement of Speed Limit signs (R2-1), designating a Special Speed Regulation purporting to be lawfully made under the authority of Mass. Gen. L. ch. 90, § 18, without: (1) completing a thorough traffic engineering study, (2) drafting a Special Speed Regulation, and (3) approval by the governing authority, the Registrar and MassHwy, violates the provisions of the "Procedures for Speed Zoning on State and Municipal Roads" regulatory standards, and therefore these Speed Limit signs (R2-1) are illegal and unenforceable.

## COUNT III

(Massachusetts Regulatory Standards Violation)

"The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control Devices" (as authorized by Mass. Gen. L. ch. 85, § 2)

50.     Mr. Sever repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

51.     City's erection, maintenance and enforcement of Speed Limit signs (R2-1) designating a Special Speed Regulation purporting to be lawfully made under the authority of Mass. Gen. L. ch. 90, § 18, without: (1) conducting proper studies and submitting data of the proposed speed zones to MassDOT, (2) conducting all hearings required for adoption drafting a Special Speed Regulation, (3) notifying MassDOT of formal adoption by the municipality, (4) approval by MassDOT and the Registry, (5) installing official speed limit signs accordance with the specific provisions of the approved regulation, and only then (6) enforcing against violators, violates the provisions of "The Massachusetts Amendments to the 2009 Manual on Uniform Traffic Control

Devices," § 10A-8 regulatory standards, and therefore these Speed Limit (R2-1) signs are illegal and unenforceable.

## COUNT IV

Substantive Due Process

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

52.     Mr. Sever repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

53.     At all relevant times, Mr. Sever possessed a constitutionally protected, fundamental liberty interest to be free from seizure and physical restraint.   Mr. Sever is entitled to constitutional protection against either being threatened to be, or actually being stopped and ordered to appear in court pursuant to the enforcement of unauthorized regulatory Speed Limit signs (R2-1).

54.     Upon information and belief, arbitrarily low speed limit signs do not increase public safety.

55.     Upon information and belief, arbitrarily low speed limit signs can substantially increase the potential number of traffic offenses.

56.     Upon information and belief, unauthorized speed limit signs create the improper appearance that motorists are violating the law when in fact they are not.

57.     Upon information and belief, the City posts, threatens to enforce, and enforces arbitrarily low Speed Limit signs (R2-1) known, or suspected by it to be invalid

under state law, in a clandestine fashion, not primarily for the purposes of safety, but done with the purpose of seizing and physically restraining motorists to increase City revenues.

58.    Upon information and belief, the City has several alternative, less restrictive means available to it under state law for regulating the speed of motor vehicles on Swampscott Road, including:

a.   The City may reauthorize Special Speed Regulation No. 1042, lawfully made under the authority of Mass. Gen. L. ch. 90, § 18, and may post and enforce the regulatory Speed Limit signs (R2-1) ranging from 25 to 40 m.p.h. as stated therein;

b.   The City may lawfully enforce the statutory speed limit on Swampscott Road (in the absence of a Special Speed Regulation), which is 40 miles per hour (unposted), because it  meets the definition of undivided highway outside a thickly settled or business district for at least ¼ of a mile pursuant to Mass. Gen. L. ch. 90, § 17(2); or,

c.   The City may always lawfully enforce the operation of motor vehicles on Swampscott Road at a reasonable and proper speed, having regard to traffic and the use of the way and the safety of the public pursuant to Mass. Gen. L. ch. 90, § 17 (unposted speed limit).

59.    Upon information and belief, it is the policy, custom, or practice, or all of these, of the City, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulatory standards and Mr. Sever's rights, erect,

maintain, threaten to enforce, or enforce; cause to be erected, maintained, threatened to enforce, or enforced; or, fail to remove, cause to be removed, prevent from threatening to enforce, or prevent from enforcing, regulatory Speed Limit signs (R2-1) that purport to set forth a Special Speed Regulation lawfully made under the authority of Mass. Gen. L. ch. 90, § 18.  Said signs in fact falsely represent a Special Speed Regulation where none exists, are unauthorized by the regulatory authorities of the Commonwealth in violation of the aforesaid statute and regulatory standards, and therefore these signs are considered illegal, unenforceable, and unconstitutional.  These actions were taken under the color of law within the meaning of the Federal Civil Rights Act, 42 U.S.C. § 1983.

60.      Upon information and belief, it is the policy, custom, or practice, or all of these, of the City, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulatory standards and Mr. Sever's rights, threaten to seize, seize, cause to be seized, or fail to cause not to be seized, Mr. Sever for violation of unauthorized regulatory Speed Limit signs (R2-1).  These actions were taken under the color of law within the meaning of the Federal Civil Rights Act, 42 U.S.C. § 1983.

61.      As a direct and proximate result of their acts as set forth above, the City threatened to deprive Mr. Sever of his liberty, under the color of law, without due process of law, in violation of the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

62.      Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Sever claims all damages, costs and attorney's fees that he is entitled by law to recover from the City for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses

were caused by said City under the color of law in violation of Mr. Sever's federal constitutional rights.

## COUNT V

Failure to Adequately Train, Supervise and Discipline

(Civil Rights Violation of the Substantive Due Process Clause of the 14th Amendment to the United States Constitution as secured by 42 U.S.C. § 1983)

63.    Mr. Sever repeats, re-alleges and incorporates by reference the above allegations as if hereinafter set forth in full.

64.    Upon information and belief, it is the policy, custom, or practice, or all of these, of the City, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulatory standards and Mr. Sever's rights, fail to instruct, supervise, control and discipline on a continuing basis personnel under their control in their duties to refrain from unlawfully and maliciously erecting, maintaining, threatening to enforce, or enforcing; causing to be erected, maintained, threatened to enforce, or enforced; or, failing to remove, cause to be removed, prevent from threatening to enforce, or prevent from enforcing, Speed Limit signs (R2-1) that purport to set forth a Special Speed Regulation lawfully made under the authority of Mass. Gen. L. ch. 90, § 18.  Said signs in fact falsely represent a Special Speed Regulation where none exists, are unauthorized by the regulatory authorities of the Commonwealth in violation of Mass. Gen. L. ch. 90, § 18, and therefore these signs are considered illegal, unenforceable, and unconstitutional.  These actions were taken under the color of law within the meaning of the Federal Civil Rights Act, 42 U.S.C. § 1983.

36

65.     Upon information and belief, it is the policy, custom, or practice, or all of these, of the City, to knowingly, recklessly, or with deliberate indifference and callous disregard of the applicable statutes, regulatory standards and Mr. Sever's rights, fail to instruct, supervise, control and discipline on a continuing basis personnel under their control in their duties to refrain from unlawfully and maliciously either threatening to seize, seize, causing to be seized, or failing to cause not to be seized, Mr. Sever for violation of unauthorized regulatory Speed Limit signs (R2-1).  These actions were taken under the color of law within the meaning of the Federal Civil Rights Act, 42 U.S.C. § 1983.

66.     Upon information and belief, the City had actual or constructive knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

67.     Upon information and belief, the City had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard of Mr. Sever's rights failed or refused to do so.

68.     Upon information and belief, the City directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of personnel under their control heretofore described.

69.     As a direct and proximate result of their acts as set forth above, the City threatened to deprive Mr. Sever of his liberty, without due process of law, in violation of

the guarantees of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983.

70.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Mr. Sever claims all damages, costs and attorney's fees that he is entitled by law to recover from the City for legal deprivations, injuries and losses set forth herein, which deprivations, injuries and losses were caused by said City under the color of law in violation of Mr. Sever's federal constitutional rights.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff Ivan A. Sever respectfully requests and prays that this Honorable Court enter judgment on each and every count of this Complaint against the City in favor of Mr. Sever as follows:

1.  Declare that the 25 m.p.h. Speed Limit signs (R2-1) at issue on Swampscott Road violate Mass. Gen. L. ch. 90, § 18 (and set forth in Mass. Gen. L. ch. 85, § 2), and therefore these Speed Limit (R2-1) signs are illegal and unenforceable;

2.  Declare that the 25 m.p.h. Speed Limit signs (R2-1) at issue on Swampscott Road violate the "Procedures for Speed Zoning on State and Municipal Roads" regulatory standards, and therefore these Speed Limit (R2-1) signs are illegal and unenforceable;

3.  Declare that the 25 m.p.h. Speed Limit signs (R2-1) at issue on Swampscott Road violate the "The Massachusetts Amendments to the 2009 Manual on Uniform

Traffic Control Devices," § 10A-8 regulatory standards, and therefore these Speed Limit (R2-1) signs are illegal and unenforceable;

4. Declare that the 25 m.p.h. Speed Limit signs (R2-1) at issue on Swampscott Road violate the Substantive Due Process Clause of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983, and therefore these Speed Limit (R2-1) signs are illegal, unenforceable and unconstitutional;

5. Declare that the City's erection, maintenance, threatened enforcement, and enforcement of arbitrarily low Speed Limit signs (R2-1) known, or suspected by it to be invalid under state law, in a clandestine fashion, not primarily for the purposes of safety, but done with the purpose of seizing and physically restraining motorists to increase City revenues, violates the Substantive Due Process Clause of the Fourteenth Amendment to the Constitution of the United States as secured by 42 U.S.C. § 1983;

6. Order the City to identify and remove all unauthorized Speed Limit signs (R2-1) erected or maintained on ways within its control;

7. Award Mr. Sever costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and,

8. Grant such further relief as this Honorable Court may deem equitable, just and appropriate.

Respectfully submitted,

Mr. Sever,
by his attorney

FREDERIC P. ZOTOS


By */s/ Frederic P. Zotos*

    Frederic P. Zotos, Esq.
    BBO#565308
    28 Old Coach Road
    Cohasset, MA 02025
    Tel: (781) 836-4295
    E-Mail: fzotos@gmail.com

Dated: July 17, 2018