```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

***************************

IVAN A. SEVER,
        Plaintiff

vs.                                     Case No. 1:18-cv-11482-MBB

CITY OF SALEM, MA,
        Defendant

***************************


                    TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE MARIANNE B. BOWLER
                       AT BOSTON, MASSACHUSETTS
                         ON DECEMBER 3, 2018


APPEARANCES:
```

For the Plaintiff:
Frederick P. Zotos, Esquire
Pathogenics, Incorporated
28 Old Coach Road
Cohasset, Massachusetts 02025
781-836-4295

For the Defendant:
Joseph A. Padolsky, Esquire
Louison Costello Condon & Pfaff, LLP
101 Summer Street, 4th Floor
Boston, Massachusetts 02110
617-439-0305


Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

---------------------------------------------------------

**TRANSCRIPTION PLUS
1334 ELM STREET
LEOMINSTER, MASSACHUSETTS 01453
(978) 466-9383
k.aveyard@comcast.net**

```
 1                    P R O C E E D I N G S
 2
 3            THE CLERK:  The United States District Court for the
 4   District of Massachusetts is now in session, the Honorable
 5   Marianne B. Bowler presiding.  Today is Monday, December 3,
 6   2018.  The case of Sever v. City of Salem, Massachusetts, Civil
 7   Action 18-11482, will now be heard.
 8            Would counsel please identify themselves for the
 9   record.
10            MR. ZOTOS:  Frederick Zotos for the plaintiff,
11   Professor Ivan A. Sever.
12            THE COURT:  Thank you.
13            MR. PADOLSKY:  Good afternoon, your Honor.  Joseph
14   Padolsky for the City of Salem.
15            THE COURT:  Thank you very much.
16            Well, we're here for your motions, Docket Entries 8
17   and 19, the Motion to Dismiss and then the Motion to Dismiss
18   the Amended Complaint.
19            MR. PADOLSKY:  Thank you, your Honor.  I'll be
20   relatively brief.
21            The case before you is a case that --
22            THE COURT:  Are you having difficulty hearing?
23            MR. MANNING:  That's me.  I forgot my hearing aid.
24            THE COURT:  Is it your client or?
25            MR. ZOTOS:  He's my -- a fellow colleague of mine.
```

1          THE COURT:  Well, would he like to sit at counsel
2   table so he can hear better?
3          MR. ZOTOS:  Would you like to sit at counsel table?
4          MR. MANNING:  Thank you very much, your Honor.
5          THE COURT:  You're welcome.  And just identify
6   yourself for the record.
7          MR. MANNING:  I'm sorry?
8          MR. ZOTOS:  Identify yourself.
9          MR. MANNING:  Oh, sorry.  Robert Manning.
10         THE COURT:  Thank you.
11         MR. PADOLSKY:  Thank you, your Honor.  As I said, I'll
12  be brief.
13         The case before you is a case that has actually been
14  put before you in a different matter.  It's Balazos versus the
15  Town of Hingham, except this case, I would suggest, is even
16  more deficient than that, and Mr. Zoto's three prior --
17  previously filed and dismissed actions under the caption Zotos
18  versus the Town of Hingham.
19         The issues that I'd like to address here at the
20  hearing are the issue of standing.  Mr. Sever, unlike Mr. Zotos
21  or his client, Mr. Balazos, was not cited at all for a civil
22  motor vehicle infraction, whereas Mr. Zotos and Mr. Balazos
23  were both cited for violating a speed sign that Mr. Zotos or
24  Ms. Balazos contended were unlawfully posted, in violation of
25  Chapter 90 of the Commonwealth's motor vehicle laws.  In this

1  case, Mr. Sever was simply complaining about the fact that on
2  Swampscott Road, a road that he allegedly frequently travels,
3  he noticed that speed signs in the speed limit of 25 miles per
4  hour were posted, and he claims, through his experience and
5  review of the Commonwealth's motor vehicle laws and certain
6  regulatory publishings, that that posting was made unlawfully,
7  and that the proper speed for that road was 40 miles per hour.
8         He claims that he's curtailed his driving habits as a
9  result and that's truly the fullest extent of his claims.  Not
10 that he was cited for speeding or pulled over and issued a
11 warning or anything to that effect, simply he noticed that
12 certain other motorists were pulled over for what he does not,
13 or at least in the Complaint, state that he knows why that
14 person was pulled over, and he noticed that the speed signs
15 were posted at 25 miles per hour.
16         That raises a constitutional issue of standing which
17 is addressed in Document No. 20, which is the Second Memorandum
18 of Law submitted by the defendants in this case.  At Page 4,
19 Article 3, Standing, has three very specific requirements:
20 That the legally protected interest is concrete,
21 particularized, and there's an actual or imminent, not a
22 conjectural, hypothetical harm.  In this case, there is no
23 legally protected interest identified by the plaintiff in this
24 case and there is no harm.  So at the very gate for the
25 plaintiff's claim, there's no standing to bring it.

1          Second to that argument, and I think this is found in
2     the plaintiff's First Amended Complaint throughout, the issue
3     is now moot.  As I'm sure your Honor has seen in review of the
4     First Amended Complaint, the plaintiff admits in the
5     allegations that the signs that he aggrieves have been removed.
6     So, effectively, if there was standing to begin with through
7     the original Complaint, the First Amended Complaint shows even
8     a lesser claim to standing in this case.  It shows that there's
9     really no issue other than potentially educational review of
10    the Commonwealth's motor vehicle laws of the City of Salem's
11    posting and removing of signs under those motor vehicle laws.
12         That's really all I intended to address at the hearing
13    on these motions.  I think that the arguments on the merits of
14    the claims brought before this Court had been addressed
15    repeatedly and I thoroughly addressed in the papers.  I will be
16    happy to answer any questions that your Honor has on those.
17         THE COURT:  No, let me hear from plaintiff.
18         MR. PADOLSKY:  Thank you.
19         MR. ZOTOS:  Thank you, your Honor.
20         THE COURT:  I want to know, I mean, how does the
21    plaintiff meet the Article 3 requirements for standing?
22         MR. ZOTOS:  Well, first of all, your Honor, the
23    defendant has argued that there's no legally protected interest
24    here, and the legally protected interest is one of the most
25    important underneath the Bill of Rights.  That's the interest

1   of Mr. Sever to his liberty to not being seized.  Now, that
2   interest is affected and invaded when somebody does a traffic
3   stop.  It's subtle black-letter law that a traffic stop is a
4   seizure of a person.
5          Now, you need to have at least reasonable suspicion
6   that there's something going on, and we're saying that when you
7   put up an illegal sign knowingly and then enforce it, which was
8   discussed in the case of Rose, Northern District of --
9          THE COURT:  But he was never stopped.
10         MR. ZOTOS:  He was never stopped.
11         So then you have to get into probabilistic standing,
12  which is the newly evolving area of law that the First Circuit
13  has identified, where Mr. Sever has an enhanced risk of harm.
14  Most importantly, the defendant is trying --
15         THE COURT:  And how does he have that now that the
16  signs are down?
17         MR. ZOTOS:  Well, first of all, as the defendant's
18  counsel failed to point out, the fact that standing is decided
19  at the time that the Complaint was filed on July 17, 2018.  At
20  that point in time, the 25-mile-an-hour speed limit signs were
21  still in place.  Afterwards, about less than a month after the
22  case was filed, the City of Salem voluntarily ceased the
23  complaint about activity.
24         By the way, the plaintiff had complained about it in
25  the fall, winter and spring of last year and this year, so it

1    only occurred after the case was filed.  So mootness, of
2    course, does not go back to the date it was filed.
3              In addition, your Honor, this is the first time that
4    the defense has raised mootness.  It did not raise it in the
5    papers.  Plaintiff raised mootness just because it saw the
6    issue and thought it would preemptively address the Court and
7    give its arguments to it.  The Court decided to raise it sua
8    sponte.
9              There are three reasons why this case is not moot.
10   Number one is to the extent that it complains of a past harm,
11   now that post harm is the chilling effect that Mr. Sever
12   experienced by having to slow down from 40 to 25 miles an hour.
13   Now, some people may say that's not a big deal, but where is
14   the big deal, your Honor, when the government knowingly decides
15   to break the law and then ask the citizen motorist to obey the
16   illicit law?  That's what we're getting at today, your Honor.
17   That's the enhanced risk of injury.
18             The only way to address that is by bringing a lawsuit
19   preemptively, which the First Circuit has pointed out is what
20   you do.  You allege that you are going to break the law that
21   you think is illegal and you make that allegation in your
22   Complaint, and then you bring the suit to -- basically ask for
23   a declaratory judgment or striking down or injunction in the
24   law, which is what we've done in this case.
25             I believe the second reason why the case is moot is

1    because to the extent there is a past injury, there are nominal
2    damages available, or might be available under Chapter 42,
3    U.S.C. 1983, which, of course, then means that the case is not
4    moot, there are nominal damages available.  I believe that's
5    the -- well, that case is cited in the brief, your Honor.
6            The third reason is that it's a present -- to the
7    extent that there's any future harm, that he's pulled over in
8    the future, of course that doesn't moot the case because it
9    hasn't happened yet.  So that event has not happened.  This is
10   the area of the law that we're involved in, this enhanced risk
11   of injury.
12           So first you have to identify the harm, which is the
13   seizure, the unreasonable seizure, of the plaintiff, and that's
14   amply described in the case of Rose, the second case of Rose,
15   your Honor, by a different court than the first case of Rose,
16   which we talked about earlier in the substantive due process
17   arguments.  The unreasonable seizure is concrete and
18   particularized as to Mr. Sever because he would be the one that
19   was being seized.  So, of course, that would satisfy that
20   requirement.  The third requirement is that it's actual or
21   imminent.  That's were we get into the probabilistic risk that
22   the First Circuit says is an evolving area of the law.  But we
23   believe the area of the law is evolving in our favor, your
24   Honor, in the plaintiff's favor.
25           First of all, we discussed the fact that the speed

1    limit times are alleged to violate those statutes and
2    regulations, and that is a major element of enhanced risk of
3    injury.  Second of all was the chilling effect we discussed
4    where Mr. Sever has slowed to avoid being basically seized and
5    then fined, stopped.  The thing is, your Honor, this is not
6    a...
7           The next thing you have to look at is the credible
8    risk of prosecution.  Is it credible that Mr. Sever has this
9    fear?  It's an objective test.  I point out the three newspaper
10   articles that were in the Complaint, your Honor, which showed
11   that the City of Salem is cash strapped, according to the
12   articles.  It has instituted a program called "Go Fast, Get
13   Fined," where they pull over vehicles.  The police themselves
14   say they don't know if it's having any effect on safety, but
15   they've raised a great deal of money.  On one street alone
16   where they knew the signs were illegal, they pulled over and
17   ticketed 900 people in the course of two years, to the tune of
18   $175,000.  Mr. Sever does not want Swampscott Road, which he
19   travels every day as a resident of Swampscott, to turn into
20   Bridge Street, and just be basically a toll road for the City
21   of Salem.  That's why we're bringing this case.
22          So the threat, we believe, is credible, as we argued,
23   and what enhances and basically helps to prove that threat is
24   that three days after the Complaint was filed, Mr. Sever
25   observed a traffic stop on Swampscott Road by the police of

1    Salem on a citizen driver, so that reinforced his --

2            THE COURT:  But how does he know what that car was

3    being stopped for?

4            MR. ZOTOS:  He does not know what that car was being

5    stopped for, but is it reasonable to assume that if the speed

6    limit is illegally set to 25 miles an hour when it should be

7    40, that the case of Rose pointed out, Rose one, I believe, the

8    fact that that would greatly increase the amount of speeding

9    tickets that are written.

10           THE COURT:  Yeah, but that person could have been

11   going 60.

12           MR. ZOTOS:  Certainly could have, your Honor, but the

13   test is objectively at the time, and that's up to your Honor to

14   decide what the reasonable person would decide at that point in

15   time, is there a threat, is there a credible threat, of being

16   prosecuted.

17           Now, the credible threat --

18           THE COURT:  I mean, you don't even know that it was a

19   speeding violation.

20           MR. ZOTOS:  But --

21           THE COURT:  The person could have been pulled over for

22   a vehicular defect.

23           MR. ZOTOS:  Absolutely, your Honor.  The person could

24   have been pulled over for having a broken tire, and they're

25   stopped and the police are helping them.  But that doesn't

1    really matter, your Honor, as far as what Mr. Sever's Complaint
2    is based on.  The credible threat is a very low standard to
3    meet, as far as from the plaintiff's side.  As a matter of
4    fact, I believe it's New Hampshire Right to Life, is the case
5    from the First Circuit, your Honor, and the fact that Salem has
6    an ongoing crackdown on speeding, number one, and the fact
7    that, number two, Salem has never disavowed that the signs are
8    actually illegal.
9         So they may have put up some new speed limit signs
10   after the case was filed, but, number one, they never contacted
11   the Massachusetts Department of Transportation; number two,
12   they never re-enacted the special speed regulation on
13   Swampscott Road.  It's still not enacted.  So those signs --
14   and, number three, the Massachusetts Department of
15   Transportation has not gone and inspected those signs to make
16   sure that they conform to the law, the special speed regulation
17   that's there.  So our position is that the signs, as are
18   currently erected, are just as unlawful as the 25-mile-an-hour
19   speed limit signs that were put up earlier.
20        Now, the City of Salem has alternative means on which
21   to defend or to enforce a legal regulatory speed limit, and
22   that's the strict scrutiny or compelling interest test, your
23   Honor, and we believe it fails it in this particular instance
24   because they could re-enact the special speed regulation, as I
25   just said.  This is in the brief.  Number two, they could

1   enforce the unposted speed limit which Mr. Sever currently
2   travels, which is 40 miles an hour.  Number three, they could
3   always enforce the unposted speed limit in Chapter 90,
4   Section 17, which is traveling at a reasonable and proper
5   speed.  They don't have to put up unauthorized illegal speed
6   limit signs which are 45 percent lower than what the speed
7   limit should be on Swampscott Road.  All it is is a speed trap,
8   your Honor, and it's affecting people's lives.
9            THE COURT:  Alright.  Do you want to reply at all?
10           MR. PADOLSKY:  No, your Honor.
11           THE COURT:  Alright.  I'll take Docket Entries 8 and
12   19 under advisement.
13           MR. PADOLSKY:  Thank you, your Honor.
14           MR. ZOTOS:  Thank you, your Honor.
15           THE COURT:  I wish you all a nice holiday season.
16           MR. ZOTOS:  Oh.  Likewise, your Honor, and all your
17   staff.
18           MR. PADOLSKY:  Same to you, your Honor.
19
20           (The hearing was concluded.)
21
22
23
24
25

C E R T I F I C A T I O N

      I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 12 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

September 13, 2019

Date